JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant Elvin Rosario appeals his conviction in the Cuyahoga County Court of Common Pleas for gross sexual imposition, assault, and unlawful restraint. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} This case arose from allegations that defendant had forcible sexual contact with J.P., his girlfriend, on May 27, 2006.
 {¶ 3} On October 26, 2006, the Cuyahoga County Grand Jury indicted defendant on three counts of rape, in violation of R.C. 2907.02(A)(2), one count of kidnapping, in violation of R.C. 2905.01, two counts of felonious assault, in violation of R.C. 2903.11, and one count of having a weapon while under a disability, in violation of R.C. 2923.13. On February 20, 2007, a bench trial began.
 {¶ 4} At trial, J.P. gave the following testimony: She was eighteen years old at the time of the incident and had been romantically involved with the defendant since she was sixteen. On or about May 26, 2006, she went to her senior prom with her cousin because the defendant did not have a tuxedo. After the prom was over, J.P. went home, changed her clothing, and drove to the west side to look for the defendant. J.P. was with her best friend, her step-brother and her step-brother's male friends. She tried calling the defendant but he did not answer his phone. At approximately 4:00 a.m., she started to drive home with her step-brother's friends inside the car. Her best friend was in a car behind her. *Page 4 
 {¶ 5} As J.P. was about to pull onto the freeway, the defendant arrived in his vehicle and pulled in front of her. He got out of his car and approached J.P.'s car. He was very angry that J.P. had other males in the car. The other passengers got out of the car and defendant got inside the driver's side of J.P.'s car. He drove away and the two started arguing. Defendant hit J.P. in the nose causing blood to spatter in the car. Defendant drove J.P. to his mother's house and got out. J.P. stayed inside the car and locked the doors. However, defendant had the keys and unlocked the door. Defendant grabbed J.P. by the hair and pulled her inside the house. Defendant pulled J.P. into his bedroom where the two started arguing again. Defendant hit her in the nose again, causing blood to spatter on the walls. Shortly thereafter both of them fell asleep.
 {¶ 6} Several hours later, the two woke up. J.P. wanted to leave but the defendant would not let her. She tried to get out the bathroom window but defendant kicked the door open. She testified that defendant got a knife and threatened to kill her and himself with it. She admitted that she made a police statement that defendant got a gun and threatened to kill her and himself with it, but testified at trial that he did not do this and only asked his brother for a gun.
 {¶ 7} J.P. testified that the defendant "felt" between her legs and touched her buttocks with his penis. She told him to stop and he did not. J.P. admitted that she signed a police statement stating that defendant had penetrated her, but testified that she did not remember saying that and was adamant that defendant had not "raped" her and only "felt" her. *Page 5 
 {¶ 8} At or around 5:30 p.m., defendant gave her the keys to the car and allowed J.P. to leave. She testified that she was bloody and that her skirt and shirt were ripped. She called 911 and was transported to the hospital. After waiting three hours, she left without treatment. Two and one half weeks later, J.P. and defendant got back together. She testified that he apologized and knew he was wrong. She testified that they are still a couple and that she is in love with him.
 {¶ 9} On cross-examination, J.P. testified that she was mad that evening because her purse was missing and it had a lot of money in it. She also testified that the defendant did not punch her but "back-handed" and "mugged" her.
 {¶ 10} In addition to J.P., the state called Officer Melissa Dawson of the Cleveland Police Department. She testified that she responded to the scene and interviewed J.P. as part of her investigation. She testified that J.P. was very distraught and crying, that there was a lot of dried blood by her nose and mouth, and that her shirt was ripped and bloody.
 {¶ 11} Next, the state called Detective Darryl Johnson of the Cleveland Police Department. He testified that he responded to the scene and collected evidence at defendant's house. He testified that he did not find any evidence of semen at the house.
 {¶ 12} Finally, the state called Detective James Butler of the Cleveland Police Department, Sex Crimes Unit. He testified that he was assigned to the case and interviewed J.P. the day after the incident. Detective Butler testified that based on the facts told to him by J.P. immediately following the incident, he recommended the *Page 6 
case be brought before the Grand Jury on charges of rape, kidnapping, and felonious assault.
 {¶ 13} Following the state's case-in-chief, defendant made a Crim. R. 29 motion for acquittal, which the trial court granted as to the firearm specifications, the sexual motivation specifications and the having a weapon while under disability, but denied to the remaining charges.
 {¶ 14} Defendant did not testify and did not present any witnesses on his own behalf.
 {¶ 15} The trial court found defendant guilty of three counts of gross sexual imposition, one count of unlawful restraint, and one count of assault. Defendant was sentenced to two years of community controlled sanctions and found to be a sexually-oriented offender. Defendant has timely appealed raising four assignments of error.
 {¶ 16} "[1.] The evidence was insufficient to sustain a finding of guilt as to gross sexual imposition in counts one, two and three."
 {¶ 17} In his first assignment of error, defendant argues that the state failed to present sufficient evidence to support his convictions for gross sexual imposition. Specifically, defendant argues that there was no evidence that he used "force" in the commission of the offenses.
 {¶ 18} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." To *Page 7 
determine whether the evidence before a trial court was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the state. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 19} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 20} Here, defendant was convicted of gross sexual imposition in violation of R.C. 2907.05. R.C. 2907.05 defines the offense of gross sexual imposition as follows:
 {¶ 21} "(A) No person shall have sexual contact with another, not the spouse of the offender . . . when any of the following applies:
 (1) The offender purposely compels the other person, or other persons, to submit by force or threat of force."
 {¶ 22} The term "force" is defined in R.C. 2901.01(A)(1) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." A defendant purposely compels his victim to submit by force or threat of force when he uses physical force against the victim, or creates the belief that physical force will be used if the victim does not submit. State v. Schaim (1992),65 Ohio St.3d 51, 55, 1992-Ohio-31. *Page 8 
 {¶ 23} Here, J.P. testified that the defendant touched and rubbed her breasts, vagina and buttocks with his hand and penis, despite her repeated protests and pleas for him to stop. From that testimony alone, a rational trier of fact could have found that the state established the element of force. Coupled with J.P.'s other testimony, that defendant hit her twice, once inside the car and again inside his bedroom, causing her nose to bleed and blood to spatter; that defendant dragged her by the hair inside the house; that defendant would not allow her to leave and that she tried to escape out of a window; that defendant kicked open the bathroom door and dragged her back to his room; and that defendant got a knife and threatened to kill her and himself with it, we find there was sufficient evidence to support the "force" or "threat of force" element necessary for the gross sexual imposition convictions.
 {¶ 24} The first assignment of error is overruled.
 {¶ 25} "[2.] The verdict was against the manifest weight of the evidence in counts, one, two and three.
 {¶ 26} "[3.] The verdict was against the manifest weight of the evidence as to counts four, five and six."
 {¶ 27} In these assignments of error, defendant argues that his convictions for gross sexual imposition, unlawful restraint and assault are against the manifest weight of the evidence. Specifically, defendant contends that J.P. was not a credible witness. *Page 9 
 {¶ 28} A manifest weight challenge questions whether the state has met its burden of persuasion. State v. Thompkins, supra at 390. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id. at 387. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction."State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 29} Here, the evidence does not weigh heavily against defendant's convictions. Defendant was convicted of gross sexual imposition, unlawful restraint and assault. Gross sexual imposition is defined by R.C. 2907.05 and provides that "no person shall compel another by force or threat of force to engage in sexual contact." Unlawful restraint is defined by R.C. 2905.03 and provides that "no person shall knowingly restrain another of their liberty." Assault is defined by R.C. 2903.13
and provides that "no person shall knowingly cause physical harm to another."
 {¶ 30} Here, J.P. testified that over a period of many hours the defendant hit her twice in the nose, dragged her by her hair, held her against her will inside his room, kicked open the door when she tried to escape out of the bathroom window, sexually fondled her despite her repeated requests to stop, and threatened to kill himself and her with a knife. Although J.P. testified at trial that she still loves the *Page 10 
defendant and is back together with him and recanted portions of her previous statements to the police, to wit: that defendant penetrated her and threatened her with a gun, her credibility was for the trier of fact to determine. See State v. DeHass (1967), 10 Ohio St.2d 230. The trier of fact may take note of any inconsistencies in testimony and resolve them accordingly, believing all, part, or none of a witness's testimony.State v. Burten, Cuyahoga App. No. 88395, 2007-Ohio-2641.
 {¶ 31} Here, in its role as fact finder, the trial court determined that defendant did restrain J.P. of her liberty when he dragged her inside his house and refused to let her leave for several hours, did knowingly cause physical harm to her when he "backhanded" and "mugged" her twice causing her nose to bleed and did use force and/or the threat of force to engage in sexual contact with her. On issues of witness credibility, a reviewing court will not substitute its judgment for that of the trier of fact unless it is patently apparent that the fact finder lost its way. State v. McCallister, Montgomery App. No. 21637,2007-Ohio-576, at 19. Based on our review of the trial transcript, we conclude that the trial court reasonably could have elected to believe the state's witnesses. Accordingly, we cannot say the trial court lost its way in finding defendant guilty of gross sexual imposition, unlawful restraint and assault.
 {¶ 32} The second and third assignments of error are overruled.
 {¶ 33} "[4.] The convictions for counts one, two and three must be reversed because it is impossible to determine whether the convictions reflect the fact for which Mr. Rosario was indicted." *Page 11 
 {¶ 34} In his last assignment of error, defendant argues that the indictment charging him with multiple counts of rape violated his constitutional rights because it was vague and does not allow him to determine the factual allegations upon which his convictions are premised.
 {¶ 35} As an initial matter, we note that defendant did not object to the indictment in the trial court.[1] Crim. R. 12(C)(2) requires a defendant to object to the indictment before the trial court. The "failure to timely object to the allegedly defective indictment constitutes a waiver of the issues involved." State v. Biros (1997),78 Ohio St.3d 426, 436, 1997-Ohio-204; State v. Brady, Cuyahoga App. No. 87854, 2007-Ohio-1453 at 139. An appellate court may recognize waived error only if it rises to the level of plain error. Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 121, 1997-Ohio-401.
 {¶ 36} The Ohio Supreme Court has held that an indictment meets constitutional requirements if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. State v.Childs, 88 Ohio St.3d 558, 564-565, 2000-Ohio-425; Crim. R. 7(B). In general, the requirements of an indictment may be met by reciting the language of the criminal statute. State v. Barrett, Cuyahoga App. No. 89918, 2008-Ohio-2370. *Page 12 
 {¶ 37} Here, the indictment tracked the language of the criminal statutes under which defendant was charged. Further, the indictment set forth the date the offenses occurred. Accordingly, we find no plain error and conclude the indictment was properly filed and alleged sufficient facts to apprise defendant of the charges against him.
 {¶ 38} The fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to
Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY
[1] Moreover, he did not file a motion for a bill of particulars. *Page 1