JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, DeAngelo Bruce, appeals from the judgment of the Cuyahoga County Court of Common Pleas convicting him of two counts of rape with notice of prior conviction, repeat violent offender and sexually violent predator specifications, and sentencing him to a term of incarceration of 15 years to life. Appellant raises ten errors for review challenging the validity of the indictment, the convictions, and the sentence. Finding no error, and for the reasons stated below, we affirm.
 {¶ 2} On June 15, 2007, the Cuyahoga County Grand Jury handed down an 11-count indictment against appellant consisting of eight counts of rape, two counts of kidnapping with sexual motivation, and one count of disseminating obscene matter to juveniles. Each of the rape and kidnapping charges contained a notice of prior conviction ("NPC"), a sexually violent predator specification ("SVP"), and a repeat violent offender specification ("RVO"). Appellant entered a plea of not guilty to the indictment in its entirety. At appellant's request, the NPC, SVP, and RVO specifications were bifurcated and those determinations were made by the court following the jury trial.
 {¶ 3} The victim, who will be identified only as "Eric," testified at trial as follows. In December 2006, when he was 18 years old, he went to live at the Emergency Disabled Men's Shelter in Cleveland. Earlier that year he had been living with his mother; but, after they were evicted from their apartment and *Page 4 
later forced to leave the Harbor Light Shelter, his mother went to a woman's shelter and he went to the men's shelter. It was the first time he was ever on his own.
 {¶ 4} Eric explained that due to shelter rules, he had to leave the shelter each day by 7:00 a.m. and could not return until evening. He spent his days at the Cleveland Public Library nearby and returned to the shelter at about 6:00 p.m. He did not eat lunch, but was able to get an evening meal at the shelter. He stayed in contact with his mother through the shelter's director.
 {¶ 5} Eric said he was introduced to appellant at the shelter, and in January 2007 started going places during the day with him. In February, appellant took Eric to visit appellant's cousin and sister, both of whom lived in Cleveland. Appellant introduced Eric to the women as his son. Eric said he liked to go to both women's houses and play video games with their children. At night, he and appellant returned to the shelter. Eric said that in February, appellant's cousin Felicia invited him to stay at her house rather than return to the shelter. He moved in, and slept in the bedroom with Felicia's three young children.
 {¶ 6} Eric testified that on five occasions in March, appellant had anal sex with him at Felicia's house against his will. He testified that the first time was on March 18, 2007 when he was getting ready to go to sleep. He said appellant came into the bedroom, held a butter knife to his throat and put his "private part" into Eric's "butt hole." Eric said that afterwards blood came out of his "butt hole." *Page 5 
Eric said the second time was on March 23, 2007 in the afternoon, when no one was at the house except the two of them. He testified that appellant pulled down his pants, bent him over the couch, and again had anal sex with him. He said he kept telling appellant his "butt was hurting" but appellant did not stop. Eric said the third time was on March 30, 2007, when he and appellant were at the house with Felicia's five-year-old son and two-year-old daughter. He said he was lying on the floor in the living room and appellant pulled down his pants and had anal sex with him on the floor. He testified that he did not want appellant to do this and that he was afraid of appellant. Eric also described two other times that appellant had anal sex with him, once in the "parent's bedroom" at the house, and another time in the "kids' bedroom" while Felicia's children were sleeping.
 {¶ 7} After the fifth incident, Eric told one of Felicia's cousins what appellant did to him. This led to an angry confrontation between Felicia's friends and appellant at a corner market. The police were called and allegations of rape were made against appellant.
 {¶ 8} Detective Michael Kovach of the Cleveland Police Department Sex Crimes Unit testified that he was brought into the case to do a follow-up investigation of the allegations of rape made after the incident at the market. On May 31, 2007, Detective Kovach interviewed Eric and took his statement. Detective Kovach testified that Eric described two incidents of anal rape by appellant. Based upon Eric's allegations, on June 6, 2007, Detective Kovach *Page 6 
arrested appellant. After being advised of his rights, appellant made a written statement. Detective Kovach read part of appellant's written statement at trial in which appellant admitted introducing Eric as his son, but denied having sex with Eric or threatening him with a knife. Appellant also stated that he was aware that Eric was "mentally slow."
 {¶ 9} The state also presented testimony from Mary Mermer of the Cuyahoga County Board of Mental Retardation and Developmental Disabilities ("CCBMRDD"), who testified to Eric's mental retardation; Dr. Henry Ng, a physician with Metrohealth Medical Center, who examined Eric at CCBMRDD's request; and Felicia Taylor, appellant's cousin.
 {¶ 10} The defense called three witnesses. Daniel O'Brien testified that he is employed as a case manager with Mental Health Services, a private nonprofit agency providing services for the mentally ill and homeless. Mr. O'Brien said his agency diagnosed appellant as paranoid schizophrenic and prescribed medication. He became appellant's case worker in January or early February of 2007 and met with appellant weekly to try and obtain benefits and housing for him. On one occasion in March, appellant brought Eric to their meeting.
 {¶ 11} Cheryl Bruce, appellant's older sister, testified that she met Eric with appellant on three occasions at her sister Angela's house. She stated that appellant introduced Eric as his nephew. She said she had very little contact with appellant and learned through her sister that appellant was staying at *Page 7 
Felicia's house. She testified that Felicia Taylor had a reputation in the family as a habitual liar.
 {¶ 12} Angela Bruce, appellant's younger sister testified that Eric often came to her house on his own to play with her kids. She testified that appellant introduced Eric to Felicia as his nephew. She also testified that in April appellant told her that he was having a consensual sexual relationship with Eric.
 {¶ 13} The trial court dismissed count 11, disseminating obscene materials to juveniles, pursuant to appellant's Crim. R. 29 motion. The jury returned guilty verdicts on the rape charges in counts one, two, and four, and the kidnapping charges in counts three and ten. Appellant was found not guilty on the remaining five counts of rape. Following a bench trial, the court found appellant guilty of the notice of prior conviction, the sexually violent predator specification, and the repeat violent offender specification.
 {¶ 14} Appellant appeals, raising ten assignments of errors.
Repeat Violent Offender Specification (RVO)
 {¶ 15} In his first assignment of error, appellant argues that inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Ohio Supreme Court excised the RVO penalty enhancements in their entirety and, therefore, the trial court erred when it sentenced him to an additional five years prison time under the RVO specification. Alternatively, appellant argues that if this court finds that Foster did not excise the RVO specification provision in its entirety, the RVO enhanced *Page 8 
penalty violates his constitutional rights because it is dependent upon judge-found facts. We disagree.
 {¶ 16} In Foster, the Court held:
 {¶ 17} "Because the specifications contained in R.C. 2929.14(D)(2)(b) and (D) (3) (b) require judicial factfinding before repeat violent offender and major drug offender penalty enhancements are imposed, they are unconstitutional. (Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348, 147 L.Ed.2d 435, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, followed.)" Id. at paragraph five of the syllabus.
 {¶ 18} The court further held that "R.C. 2929.14(D)(2)(b) and (D)(3)(b) are capable of being severed. After the severance, judicial factfinding is not required before imposition of additional penalties for repeat violent offender and major drug offender specifications." Id. at paragraph six of the syllabus.
 {¶ 19} In State v. Roberson, Cuyahoga App. No. 88338, 2007-Ohio-2772, discretionary appeal not allowed, 115 Ohio St.3d 1475, 2007-Ohio-5735, this court considered the meaning of the sixth paragraph of the syllabus in Foster and stated:
 {¶ 20} "We read this to mean that only the offending portion of R.C. 2929.14(D)(2)(b) is severed. Consequently, the imposition of an additional penalty for the repeat violent offender specification is constitutional. Thus, a *Page 9 
judge may impose an additional one-to ten-year sentence on the repeat violent offender specification without judicial fact-finding."
 {¶ 21} The record indicates that the grand jury indicted appellant on the repeat violent offender specification which is defined in R.C. 2929.01(DD) as follows:
 {¶ 22} "Repeat violent offender means a person about whom both of the following apply:
 {¶ 23} "(1) The person is being sentenced for committing or for complicity in committing any of the following:
 {¶ 24} "(a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;
 {¶ 25} "(b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (DD)(1)(a) of this section.
 {¶ 26} "(2) The person previously was convicted of or pleaded guilty to an offense described in division (DD)(1)(a) or (b) of this section."
 {¶ 27} The trial court was sentencing appellant for the offense of rape by force or threat of force, a first degree felony. Additionally, the state provided a certified copy of a 1990 Cuyahoga County Court of Common Pleas judgment entry of conviction against appellant for rape of a five-year-old. Consequently, the trial *Page 10 
court did not err in sentencing appellant pursuant to the RVO specification. Appellant's first assignment of error is overruled.
 {¶ 28} In his second assignment of error, appellant argues that the trial court failed to state its findings explaining the imposed sentence under the RVO specification as required by R.C. 2929.14(D)(2)(e) and therefore the sentence must be vacated and remanded for resentencing.
 {¶ 29} R.C. 2929.14(D)(2)(e) provides: "When imposing a sentence pursuant to division (D)(2)(a) or (b) of this section, the court shall state its findings explaining the imposed sentence." However, as noted above, after Foster the court is no longer required to make findings or give reasons for imposing a sentence under an RVO specification. Accordingly, appellant's second assignment is overruled.
Sexually Violent Predator Specification (SVP)
 {¶ 30} In his third assignment of error, appellant asserts that the indictment was defective because it did not include all of the essential elements of the sexually violent predator specification. He argues that the language in the indictment and the language of R.C. 2941.148 is insufficient to charge an offense and therefore the SVP conviction must be vacated.
 {¶ 31} The Ohio Supreme Court has stated that, "a specification is, by its very nature, ancillary to, and completely dependent upon, the existence of the underlying criminal charge or charges to which the specification is attached." *Page 11 State v. Nagel, 84 Ohio St.3d 280, 286, 1999-Ohio-507. Additionally, that court has previously referred to specifications as penalty enhancers, rather than separate violations or offenses. State v.Evans, 113 Ohio St.3d 100, citing State v. Foster, supra, at _71. Therefore, a sexually violent predator specification is not a separate criminal offense, it is a sentencing enhancement that must be properly stated in the indictment as part of the underlying charge.
 {¶ 32} The requirements for an indictment containing a sexually violent predator specification are contained in R.C. 2941.148 that provides in pertinent part: "A specification *** that an offender is a sexually violent predator shall be stated at the end of the body of the indictment, count, or information and shall be stated in substantially the following form: SPECIFICATION (OR, SPECIFICATION TO THE FIRST COUNT). The grand jury (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that the offender is a sexually violent predator." R.C. 2941.148(A)(2).
 {¶ 33} A review of the indictment in this case demonstrates that each of the ten counts that included a sexually violent predator specification mirrored the statutory language as provided by R.C. 2941.148. Accordingly, the third assignment of error is overruled.
 {¶ 34} In his fourth assignment of error, appellant asserts that his trial attorney's failure to object to the defective indictment for the sexually violent predator specification constituted ineffective assistance of counsel. Having found *Page 12 
in the preceding assignment that the indictment for the sexually violent predator specification was not defective, we overrule appellant's fourth assignment of error.
 {¶ 35} Appellant's fifth assignment of error asserts that there was insufficient evidence to support the trial court's conviction on the sexually violent predator specification.
 {¶ 36} The standard of review for sufficiency is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 37} R.C. 2971.01(H)(1) defines a sexually violent predator as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future of one or more sexually violent offenses." Because of the punitive aspects of the specification, for a sexually violent predator specification to apply to an offender, the state must prove beyond a reasonable doubt that R.C. 2971.01(H) applies to the offender. State v. Williams (2000), 88 Ohio St.3d 513,532, 2000-Ohio-428; State v. Ward (1990), 130 Ohio App.3d 551.
 {¶ 38} R.C. 2971.01(H)(2) provides factors "which may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses." One of the stated factors *Page 13 
is, "the person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense." Id.
 {¶ 39} In the instant case, the state presented evidence that appellant had been convicted of raping his five-year-old neighbor in 1990. The state presented the detective who handled the investigation in that prior conviction who read from a confession he had obtained from appellant in which appellant admitted to sodomizing the five-year-old girl. Additionally, the trial court had before it the jury's findings that appellant raped and kidnapped the 18-year-old mildly mentally retarded victim in this case shortly after being paroled from prison for the first rape. Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found beyond a reasonable doubt that appellant was a sexually violent predator.
 {¶ 40} Appellant's fifth assignment or error is overruled.
Rape and Kidnapping
 {¶ 41} In his sixth assignment of error, appellant challenges the weight and sufficiency of the evidence supporting his rape convictions. Appellant was convicted of rape in violation of R.C. 2907.02(A)(2) which provides: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." *Page 14 
 {¶ 42} Appellant argues that the state failed to elicit credible evidence of force beyond that inherent in the commission of the sexual conduct and therefore there was insufficient evidence to support a conviction.
 {¶ 43} The standard of review for sufficiency is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks, supra.
 {¶ 44} The victim testified that appellant held a knife to his throat and had anal sex with him against his will and threatened to kill him if he told anyone. He testified that another time appellant bent him over the couch, had sex with him and would not stop when he told appellant it was hurting him. He testified to other incidents of sex against his will and that he was scared of appellant. Therefore, we find that there was sufficient evidence of "force" or "threat of force," to support a rape conviction under R.C. 2907.02(A)(2).
 {¶ 45} Appellant argues that his convictions are against the manifest weight of the evidence. Specifically, appellant contends that the victim gave conflicting evidence regarding appellant's use of a butter knife as a weapon.
 {¶ 46} In reviewing a claim that a verdict is against the manifest weight of the evidence, this court considers the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and, in considering conflicts in the evidence, determines whether the trier of fact clearly lost its way *Page 15 
and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. In doing so, we remain mindful that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. This gives the trier of fact the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." State v. Antill (1964),176 Ohio St. 61, 67. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Thompkins, supra, at 387.
 {¶ 47} Appellant challenges the victim's credibility by citing to a conflict in the victim's testimony relating to when appellant used the knife as a weapon. On direct examination, the victim testified the knife was used during the first rape. Upon cross-examination, the victim stated the knife was used during the second rape. On issues of witness credibility, a reviewing court will not substitute its judgment for that of the trier of fact unless it is patently apparent that the fact-finder lost its way. State v. Rosario, Cuyahoga App. No. 89770, 2008-Ohio-3804, _31, citing State v. McCallister, Montgomery App. No. 21637,2007-Ohio-576. After reviewing the trial transcript, we cannot say that the jury clearly lost its way in resolving the conflict over the use of the knife. The victim never wavered *Page 16 
in his testimony that appellant used a knife, only in recalling exactly when it was used. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 48} In his seventh and eighth assignments of error, appellant challenges his convictions for rape and kidnapping as charged in counts two, three, and ten of the indictment. Appellant, however, is mistaken in his facts. He was not convicted of those charges. The record reflects that although the jury returned a guilty verdict on counts one, two, three, four, and ten, the trial court merged counts two and three with count one, and count ten with count four. As a result, appellant was convicted only of two counts of rape in violation of R.C. 2907.02(A)(2) as charged in counts one and four of the indictment. Accordingly, we overrule appellant's seventh and eighth assignments of error.
Issues of Evidence
 {¶ 49} In his ninth assignment of error, appellant asserts that he was denied a fair trial due to several witnesses referencing his past criminal record without the trial court issuing a curative instruction.
 {¶ 50} The record reflects that appellant failed to object to any of the now contested testimony and failed to request the court issue a limiting or curative instruction. Any issue that could or should have been called to the trial court's attention at the time when such error could have been avoided or corrected by the trial court is waived on appeal. State v. Awan (1986), 22 Ohio St.3d 120. *Page 17 
Accordingly, we find that appellant waived this issue. Appellant's ninth assignment of error is overruled.
 {¶ 51} In the tenth and final assignment, appellant asserts that his trial counsel was ineffective for failing to object to the testimony referencing appellant's prior criminal history. He argues that counsel's failure to object and request a curative instruction tainted the outcome of the trial.
 {¶ 52} To prevail on a claim of ineffective assistance of defense counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance resulted in real prejudice. See Strickland v.Washington (1984), 466 U.S. 668, 694; State v. Bradley (1989),42 Ohio St.3d 136. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. Id. at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 687.
 {¶ 53} Appellant offers nothing to rebut the presumption that counsel's actions were the product of a sound trial strategy. The state argues that defense counsel's failure to seek a curative instruction was decided at sidebar and part of *Page 18 
a strategic decision so as not to emphasize the references to any sort of past record. "A reviewing court may not second-guess decisions of counsel which can be considered matters of trial strategy." State v.Smith (1985), 17 Ohio St.3d 98.
 {¶ 54} "A properly licensed attorney in Ohio is presumed competent. Thus, the burden of proving ineffectiveness is on the defendant." Id. at 100. Appellant has failed to prove that his trial counsel's failure to object to the contested testimony and to request a curative instruction constituted ineffective assistance of counsel.
 {¶ 55} Appellant's tenth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and PATRICIA ANN BLACKMON, J., CONCUR *Page 1