[Cite as *State v. Brown*, 2013-Ohio-1982.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No.   98540

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES E. BROWN

DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED IN PART, REVERSED IN PART
### AND VACATED IN PART

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-552452

**BEFORE:**   E.A. Gallagher, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**    May 16, 2013

**ATTORNEY FOR APPELLANT**

Edward M. Heindel
450 Standard Building
1370 Ontario Street
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:    Kevin R. Filiatraut
James Hofelich
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Charles Brown, appeals from his conviction in the Cuyahoga County Court of Common Pleas for criminal trespass, attempted rape, kidnapping with sexual motivation and two counts of theft. We affirm, in part, and reverse, in part.

**{¶2}** On July 13, 2011, at approximately 12:30 p.m., Robert Williams, a custodial technician employed at Trinity Towers apartment complex in Bedford Heights, Ohio, was returning from his lunch break when he encountered Brown and a woman named K.W. in a stairwell inside one of the Trinity Towers apartment buildings. In passing, Williams overheard Brown asking K.W. for her phone number. Surveillance video showed Williams exiting the stairwell followed shortly thereafter by Brown and K.W. The video showed Brown and K.W. walking briefly in the hallway with Brown's arms around her before she uncoupled from Brown and exited the hallway via the same door through which Robert Williams had exited. The video showed Brown exiting through a different door.

**{¶3}** Williams testified that while walking towards his office building to resume work, he heard K.W. behind him mumbling, "like help, help or something." He dismissed K.W.'s mumbling because she was known to him from his time working at Trinity Towers and she had a reputation for having some type of mental condition where

he would see her "talking to the wall or talking to the garbage dumpster * * *."

{¶4} Dontae McKissic also testified that he was familiar with K.W. from living at Trinity Towers, that he knew her to act strangely and had previously observed her walking in the parking lot and talking to herself. On July 13, 2011, McKissic saw K.W., Brown and two other males in the parking lot. McKissic observed K.W. entering her own first floor apartment from a patio entrance and overheard Brown, who was on K.W.'s patio, state to his two companions, "lets go up in here." McKissic entered the apartment building to take an elevator to his own unit but, motivated by his belief that K.W. and Brown did not know one another and concerned for her safety, he instead went to the hallway outside her apartment and heard a voice saying "help me."

{¶5} McKissic entered K.W.'s unlocked apartment unit and saw Brown and K.W. in a back bedroom. K.W. was lying on a bed and Brown was attempting to remove her pants, which were at her knees. Brown stood over her with his own pants down. McKissic again heard K.W. ask for help. McKissic testified that Brown looked over his shoulder, saw him and moved to close the bedroom door. At this point, McKissic exited the apartment to identify the unit's number and call the Bedford Heights police. While on the phone with police, he reentered the apartment to find that Brown had left. McKissic gave a description of Brown to police and Brown was apprehended, with a purse, outside the apartment building. The contents of the purse indicated that it belonged to K.W.

**{¶6}** K.W. was transported by police to Hillcrest Hospital but refused consent for a sexual assault examination and provided incoherent answers to questioning. K.W.'s pants had been removed and she was clothed in a comforter. Police examined both the comforter and a sheet found in K.W.'s apartment but did not find evidence of Brown's DNA.

**{¶7}** Brown was indicted on July 21, 2011, charged with aggravated burglary, two counts of attempted rape, two counts of kidnapping with sexual motivation and two counts of robbery in violation of R.C. 2911.02.

**{¶8}** The case proceeded to a jury trial on the above counts and the jury returned a verdict of not guilty on the aggravated burglary charge but guilty of the lesser-included offense of criminal trespass in violation of R.C. 2911.21(A)(1), guilty of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02(A)(2), not guilty of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02(A)(1), guilty of kidnapping in violation of R.C. 2905.01(A)(4) with sexual motivation pursuant to R.C. 2941.147(A), not guilty of kidnapping in violation of R.C. 2905.01(A)(2) and not guilty of the two counts of robbery but guilty of two lesser-included charges of theft in violation of R.C. 2913.02(A)(1).

**{¶9}** Brown waived his right to a jury trial on the notice of prior conviction and repeat violent offender specifications attached to the aggravated burglary, attempted rape, kidnapping, and robbery charges, and to the sexually violent predator specifications attached to the rape and kidnapping charges. The trial court found Brown guilty of all

the specifications. After a hearing, the court found him to be a sexually violent predator.

{¶10} Brown was sentenced to a jail term of 30 days on the criminal trespass charge and 180 days for each charge of theft. The trial court found Brown's convictions for attempted rape and kidnapping to be allied offenses and merged the convictions at sentencing. The state elected to proceed with sentencing under the kidnapping charge and the trial court imposed a prison term of 12 years to life on that count. The trial court ordered all the sentences on all counts to be served concurrently.

{¶11} Brown appeals asserting three assignments of error.

Assignment of Error I

The convictions for attempted rape, kidnapping and the sexually violent predator specification were against the manifest weight of the evidence, and were not supported by sufficient evidence.

Assignment of Error II

The trial court erred when it sentenced Brown to 12 years to life as that sentence was contrary to law.

Assignment of Error III

The trial court erred when it permitted Detective Sorace to offer his lay opinion as to the [sic] whether the encounter between K.W. and Brown was consensual.

{¶12} For Brown's first assignment of error, this court has said, in evaluating a sufficiency of the evidence argument, courts are to assess not whether the state's

evidence is to be believed but whether, if believed, the evidence against a defendant would support a conviction. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. The weight and credibility of the evidence are left to the trier of fact. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 23.

{¶13} A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Byrd*, 8th Dist. No. 98037, 2012-Ohio-5728, ¶ 27. When considering a manifest weight challenge, a reviewing court reviews the entire record, weighs the evidence and all reasonable inferences therefrom, considers the credibility of the witnesses and determines whether the finder of fact clearly lost its way. *State v. Jackson*, 8th Dist. No. 86542, 2006-Ohio-1938, ¶ 29. A reviewing court may reverse the judgment of conviction if it appears that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id*.

{¶14} Brown argues that the state presented insufficient evidence to sustain his convictions for attempted rape, kidnapping and the sexually violent predator specifications.

**{¶15}** Brown was convicted of attempted rape in violation of R.C. 2923.02 and R.C. 2907.02(A)(2). R.C. 2907.02(A)(2) states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

**{¶16}** The attempt statute, R.C. 2923.02(A) provides:

No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

**{¶17}** Sexual conduct is defined in R.C. 2907.01(A) as:

vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

**{¶18}** The Ohio Supreme Court has held that a criminal attempt is an act or omission constituting a substantial step toward committing a crime. *State v. Woods*, 48 Ohio St.2d 127, 357 N.E.2d 1059 (1976), *overruled in part on other grounds, State v. Downs*, 51 Ohio St.2d 47, 53, 364 N.E.2d 1140 (1977). The act "must be strongly corroborative of the actor's criminal purpose" in order to constitute a substantial step toward the act, but need not be the last proximate act prior to the commission of the offense. *Id*., at paragraph one of the syllabus. This standard directs attention to overt acts of the defendant that "convincingly demonstrate" the defendant's firm purpose to commit the offense. *Id*. at 132. (Citations omitted.)

> While removing the victim's clothing can amount to a "substantial step" toward the commission of rape, a defendant cannot be convicted of attempted rape solely on evidence that he removed the victim's clothing. There must be evidence indicating purpose to commit rape instead of some other sex offense, such as gross sexual imposition, R.C. 2907.05, which requires only sexual contact.[1]

*State v. Davis*, 76 Ohio St.3d 107, 114, 1996-Ohio-414, 666 N.E.2d 1099.

{¶19} In *State v. Heinish*, 50 Ohio St.3d 231, 553 N.E.2d 1026 (1990), the Ohio Supreme Court found evidence of a victim's pants being pulled down and her blouse opened, without more, to be insufficient to convict a defendant of attempted rape. In *State v. Powell*, 49 Ohio St.3d 255, 552 N.E.2d 191 (1990), the court found a defendant's order for the victim to undress was strongly corroborative of his intent to rape her because he confessed he was going to have sex with her. In *State v. Lucas*, 5th Dist. No. 2005AP090063, 2006-Ohio-1675, the Fifth District Court of Appeals upheld a conviction for attempted rape where the victim was knocked to the floor and the defendant, pulling on the victim's pants, stated, "the pants are coming off." *Id.* at ¶ 23. The defendant had his own pants down around his ankles at the time, was not wearing underwear and at one point was laying on top of the victim. *Id.* at ¶ 24. The Fifth District held that, "[the] act of lying on the victim with his genitals exposed to her vaginal area while attempting to pull off her pants was a 'substantial step' to rape." *Id.* at ¶ 27.

{¶20} This court vacated a defendant's conviction for attempted rape in *State v.*

---

[1] Rape requires sexual conduct while gross sexual imposition, on the other hand, requires only sexual contact, defined as "any touching of an erogenous zone of

*Jones*, 8th Dist. No. 82978, 2004-Ohio-512, where the defendant ordered the victim to remove her clothes at knife-point before fleeing when the victim called 911. We held that the record contained no evidence that the defendant attempted to engage in sexual conduct with the victim or that he expressed an intent to do so. *Id*. at ¶ 24. We stated, "[t]here were no 'sexual advances' toward [the victim] and no evidence that [the defendant] performed an 'overt act,' such as unzipping his pants or removing his clothes, that would indicate his intent to rape her." *Id*. at ¶ 24.

{¶21} Unlike the situation presented in *Jones*, we find the present record contains evidence that, viewed in a light most favorable to the prosecution, demonstrates an intent on the part of Brown to rape the victim. Dontae McKissic observed Brown standing over the victim, with his own pants down, attempting to remove the victim's pants. Although McKissic could not state whether or not Brown was wearing underwear at the time, the fact that Brown removed his own pants is indicative of his intent to engage in sexual conduct with the victim and is inconsistent with an intent to engage in mere sexual contact. After Brown was discovered by McKissic and fled the apartment, the victim was discovered unclothed from the waist down. Under these facts, we find that the state presented evidence indicating purpose to commit rape instead of some other sex offense.

---

another * * *." R.C. 2907.01(B).

**{¶22}** Brown's conviction of kidnapping in violation of R.C. 2905.01(A)(4) is similarly supported by sufficient evidence. R.C. 2905.01(A)(4) provides:

> (A) No person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will * * *.

**{¶23}** R.C. 2907.01(C) defines sexual activity as "sexual conduct or sexual contact, or both."

**{¶24}** Brown argues that the state failed to prove that he engaged in any type of sexual activity with the victim. Brown's argument is misguided because the kidnapping under R.C. 2905.01(A)(4) is complete when a person removes another or restrains the other's liberty for the purpose of engaging in sexual activity. *State v. Fischer*, 8th Dist. No. 75222, 1999 Ohio App. LEXIS 5568 (Nov. 24, 1999). R.C. 2905.01(A)(4) requires only that the restraint or removal occur for the purpose of nonconsensual sexual activity, not that sexual activity actually take place. *Id.*, citing *State v. Powell*, 49 Ohio St.3d 255, 552 N.E.2d 191 (1990). As addressed above, the state presented sufficient evidence of Brown's purpose to engage in sexual activity with the victim when McKissic testified that he observed Brown standing over the victim pulling her pants off.

**{¶25}** Although not raised in Brown's arguments, we further note that the state also offered sufficient proof to support his conviction of the sexual motivation

specification (R.C. 2941.147(A)) attached to the kidnapping charge. R.C. 2941.147(B) adopts the definition of "sexual motivation" found in R.C. 2971.01(J): "a purpose to gratify the sexual needs or desires of the offender." The testimony of McKissic demonstrated such a purpose on the part of Brown.

{¶26} Finally, Brown argues that the evidence was insufficient for the trial court to find him guilty of the sexually violent predator specifications pursuant to R.C. 2941.148 attached to the rape and kidnapping charges. R.C. 2971.01(H)(1) defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." Brown's convictions for attempted rape and kidnapping with a sexual motivation qualify as sexually violent offenses pursuant to R.C. 2971.01.

{¶27} R.C. 2971.01(H)(2) provides a list of factors that may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses. Brown argues that the trial court erred in finding him to be a sexually violent predator because none of the R.C. 2971.01(H)(2) factors are applicable to him. We disagree.

{¶28} The following R.C. 2971.01(H)(2) factors are relevant to the present analysis:

> (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are

one conviction, and a conviction set aside pursuant to law is not a conviction.

* * *

(f) Any other relevant evidence.

{¶29} Brown stipulated that he had been convicted of rape in violation of R.C. 2907.02(B) in Cuyahoga C.P. No. CR-374402. The state offered evidence that the conviction stemmed from an incident that occurred on March 21, 1999. The trial court was free to consider this conviction in conjunction with his convictions in the present case under R.C. 2971.01(H)(2)(a). *See, e.g.*, *State v. Bruce*, 8th Dist. No. 90897, 2009-Ohio-1067, ¶ 39; *State v. Petkovic*, 8th Dist. No. 97548, 2012-Ohio-4050, ¶ 49. The state additionally offered evidence that in connection with Brown's prior conviction of rape he was adjudicated a sexual predator. The state offered evidence that in connection with his sex offender registration, Brown was subsequently convicted of a manner of registering offense in violation of R.C. 2950.04 in 2007 and an attempted failure to register offense in violation of R.C. 2923.02 and 2950.06 in 2010. Viewing the evidence in a light most favorable to the prosecution, we conclude that any rational trier of fact could have found, beyond a reasonable doubt, that appellant was a sexually violent predator.

{¶30} Although not raised in Brown's sufficiency arguments, we note that the record is devoid of sufficient evidence to support two separate theft convictions. Brown was convicted of two counts of theft in violation of R.C. 2913.02(A)(1), which provides:

(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

(1) Without the consent of the owner or person authorized to give consent * * *.

{¶31} The state presented sufficient evidence to support only one conviction of theft relating to Brown's theft of K.W.'s purse. During closing arguments, the state made reference to a cap recovered from Brown's person at the time of his arrest. However, there was no evidence presented indicating that this cap belonged to K.W. In fact, in the security camera footage introduced by the state where Robert Williams identified Brown interacting with K.W. in a hallway prior to the incident in K.W.'s apartment unit, Brown is seen wearing a black cap. It is well established that "[c]riminal convictions cannot rest upon mere speculation; the state must establish the guilt of the accused by proof beyond a reasonable doubt." *State v. Haynes*, 25 Ohio St.2d 264, 270, 267 N.E.2d 787 (1971). We find that the state failed to present sufficient evidence to sustain Brown's conviction to the second count of theft.

{¶32} With respect to Brown's manifest weight argument, in light of the entire record, we cannot say that the finder of fact clearly lost its way in finding him guilty of attempted rape, kidnapping and the sexually violent predator specification. Although this case presents an unusual factual situation where the victim did not testify as to the

non-consensual nature of the interactions, the circumstantial evidence, particularly the testimony of Dontae McKissic, established Brown's guilt of the above charges.

{¶33} Brown's first assignment of error is sustained in part and overruled in part.

{¶34} Regarding Brown's second assignment of error, a review of felony sentencing involves a two-step analysis: (1) whether the trial court complied with all applicable rules and statutes to determine if the sentence was clearly and convincingly contrary to law; and (2) whether the trial court abused its decision by imposing the sentence. *State v. Kalish*, 120 Ohio St.3d 23, 2008- Ohio-4912, 896 N.E.2d 124, ¶ 4. In the present instance Brown does not argue that the trial court abused its discretion in sentencing him to 12 years to life for his conviction of kidnapping in violation of R.C. 2905.01(A)(4) with a sexual motivation specification pursuant to R.C. 2941.147(A) and a sexually violent predator specification pursuant to R.C. 2941.148. Brown argues solely that the trial court's sentence for this offense was contrary to law. We disagree.

{¶35} R.C. 2971.03(A) directs the trial court to sentence a defendant convicted of a first-degree felony, designated kidnapping offense committed on or after January 1, 2008, where the victim of the offense is *not* less than 13 years of age and the defendant also is convicted of both a sexual motivation specification and a sexually violent predator specification as follows:

[the court] shall impose an indefinite term consisting of a minimum term fixed by the court that is not less than ten years and a maximum term of life imprisonment."[2]

R.C. 2971.03(A)(3)(b)(ii).

**{¶36}** Brown's sentence of 12 years to life is within the indefinite range provided by the statute. The trial court is not required to impose a term of ten years, specifically, as the minimum term in a sentence pursuant to R.C. 2971.03(A)(3)(b)(ii). Twelve years to life, while not the minimum sentence the trial court could have imposed, falls within the statutory range and thus is not contrary to law. *See*, *e.g.*, *State v. Austin*, 1st Dist. No. C-110804, 2012-Ohio-4232, ¶ 26 (Upholding a sentence of 15 years to life for rape with a sexually violent predator specification pursuant to identical indefinite term language in R.C. 2971.03(A)(3)(d)(ii)); *State v. Fisher*, 8th Dist. No. 97685, 2012-Ohio-2394, ¶ 3 (noting that ten years to life is the *minimum* sentence that the court could impose under identical indefinite term language in R.C. 2971.03(A)(3)(d)(ii).)

**{¶37}** Brown's second assignment of error is overruled.

**{¶38}** Regarding Brown's third assignment of error, at trial, the state asked Bedford Heights Detective Raymond Sorace if, during the course of his investigation, he had uncovered any evidence indicating that the encounter between K.W. and Brown was consensual. The trial court allowed the witness to answer over Brown's objection and

---

[2]Brown argues that he should have been sentenced pursuant to R.C. 2905.01(C)(3). That provision is inapplicable to the present case because it pertains only to instances where the victim of the offense is less than 13 years of age.

the detective answered, "no." Brown argues that the trial court improperly allowed the detective to offer his lay opinion as to whether the encounter was consensual.

{¶39} "A trial court has broad discretion in admitting evidence. Absent an abuse of that discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld." *Fackelman v. Micronix*, 8th Dist. No. 98320, 2012-Ohio-5513, ¶ 17, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

{¶40} Contrary to Brown's assertions, the subject testimony did not involve an opinion; Detective Sorace merely stated that he did not discover evidence of consent during his investigation. He did not offer an opinion as to whether or not the encounter was consensual. The testimony at trial was clear that Dontae McKissic was the sole witness to the encounter between Brown and K.W. Detective Sorace did not witness any of the interactions between Brown and K.W. and contrary to Brown's argument, the state did not attempt to elicit his lay opinion as to the consensual nature of the encounter. Brown has demonstrated no prejudice from the above question and we cannot say that the trial court abused its discretion in overruling his objection.

{¶41} Brown's third assignment of error is overruled.

{¶42} The judgment of the trial court is affirmed in part and reversed in part.

**{¶43}** Brown's conviction for theft in violation of R.C. 2913.02(A)(1) and the sentence imposed thereon in connection with count seven is vacated. Brown's remaining convictions are affirmed.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR