# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97548**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## NICK PETKOVIC

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543261

**BEFORE:** Sweeney, J., Boyle, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 6, 2012

**ATTORNEY FOR APPELLANT**

Jerome Emoff, Esq.
55 Public Square, Suite 950
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

William D. Mason, Esq.
Cuyahoga County Prosecutor
By:   Jesse W. Canonico, Esq.
Assistant County Prosecutor
Ninth Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

JAMES J. SWEENEY, J.:

{¶1} Defendant-appellant Nick Petkovic ("defendant") appeals his convictions for rape and other sexual offenses and his accompanying sentence of 100-years-to-life in prison. After reviewing the facts of the case and pertinent law, we affirm.

{¶2} In the summer of 2009, 17-year-old N.P., who is developmentally delayed, met defendant online through the website "okcupid.com." Defendant was 48 years old at the time. Defendant began a sexual relationship with N.P., which took place at N.P.'s house while N.P.'s mother was working. In April 2010, a friend of N.P. became concerned about this inappropriate relationship, and spoke with N.P.'s school guidance counselor who contacted Bay Village Police Detective Kevin Krolkosky.

{¶3} The police confronted defendant who did not deny his relationship with N.P., but said it was platonic until she turned 18. The police asked N.P.'s mother if she knew who defendant was. She did not.

{¶4} On April 28, 2010, defendant took N.P. to downtown Cleveland where they got a marriage license and a wedding ceremony was performed. N.P.'s mother was unaware of the situation. Later that day, defendant had an interview with the Bay Village police, in which he stated that he loved N.P. despite her cognitive deficits, and he would like to marry her someday. Defendant did not tell the police that he had, in fact, married N.P. earlier that

day.  N.P. told her mom about the wedding, and N.P.'s mom realized that N.P. did not understand what happened.   N.P.'s mom called the authorities immediately.

{¶5}  On April 30, 2010, the police interviewed N.P.  The information about when she met and began having sex with defendant was inconsistent with the information that defendant provided the authorities.  The police also learned that defendant documented his sexual activities with N.P. on video and that some of these videos were taken before N.P.'s 18th birthday.

{¶6}  On October 27, 2010, defendant was indicted with 56 counts related to the sexual abuse of N.P.   On October 12, 2011, a jury found defendant guilty of the following:

13 counts of rape in violation of R.C. 2907.02(A)(1)(c);

seven counts of gross sexual imposition in violation of R.C. 2907.05(A)(5);

nine counts of pandering sexually oriented matter involving a minor in violation of R.C. 2907.322(A)(1);

seven counts of endangering children in violation of R.C. 2919.22(B)(5);

seven counts of kidnapping in violation of R.C. 2905.01(A)(2) with sexual motivation specifications in violation of R.C. 2941.147(A);

one count of tampering with evidence in violation of R.C. 2921.12(A)(1); and

one count of possessing criminal tools in violation of R.C. 2923.24(A).

{¶7}  On October 18, 2011, the court sentenced defendant to seven consecutive terms of ten-years-to-life in prison for the kidnappings, 28 consecutive years for pandering sexually

oriented matter, and two consecutive years for tampering with evidence. All other sentences were ordered to be served concurrently with this aggregate sentence of 100-years-to-life in prison. Defendant appeals and raises seven assignments of error for our review.

I.

The trial court prevented appellant from presenting a defense.

{¶8} Specifically, defendant argues that the court erred when it limited the scope of the defense requested independent evaluation of N.P.'s mental capacity. As support for this argument, defendant cites to *State v. Zeh*, 31 Ohio St.3d 99, 105, 509 N.E.2d 414 (1987), which holds that

> when the mental condition of the victim-potential witness is a contested, essential element of the crime charged, the defense may move the court that the state be barred from utilizing evidence of such mental condition obtained in a clinical interview of the witness prior to trial unless the witness voluntarily agrees to a court-appointed, independent examination, with the results being made available to both sides.

{¶9} The rape and gross sexual imposition offenses of which defendant was convicted include an element that the victim's "ability to resist or consent is substantially impaired because of a mental * * * condition," as well as an element that defendant knew or had reasonable cause to believe this. R.C. 2907.02(A)(1)(c); R.C. 2907.05(A)(5). Substantial impairment can be "established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his

conduct." *Zeh*, 31 Ohio St.3d at 103-104.    Additionally, defendant was convicted of kidnapping a victim who was "mentally incompetent."    R.C. 2905.01(A)(2).

{¶10} In the instant case, the State presented the testimony of Katie Connell, a licensed forensic psychologist who works part time for the Cuyahoga County Board of Developmental Disabilities.    Dr. Connell received a referral to evaluate "health and safety concerns" of N.P. in the summer of 2010.    When Dr. Connell received the referral, the police were involved in the situation, but defendant had not been arrested or indicted.

{¶11} It was Dr. Connell's understanding that N.P. had a cognitive disability that was diagnosed in preschool.    Dr. Connell's evaluation consisted of reviewing N.P.'s records and conducting two face-to-face meetings with N.P.    Dr. Connell's review of N.P.'s school records shows that N.P. "had a full-scale IQ of 73, which falls in the borderline range of intellectual functioning.    She has shown deficits in academic skills over the years, and has needed special education services to help her in the school setting" since the age of three. N.P. was taken out of public high school, because she was "unmercifully picked on by peers."  N.P. had been functioning "around a fourth or fifth grade level."    Dr. Connell diagnosed N.P.'s disorder as "autosomal cytogenetic abnormality," which is often associated with developmental delays.

{¶12}    Dr. Connell completed a report based on her evaluation of N.P. and concluded, among other things, that N.P. "appeared highly suggestible * * * within social situations and in particular, intimate relationships. [N.P.'s] responses to questions suggest she is overly trusting and thus easily misled and manipulated."   For example, Dr. Connell testified about "how all of a sudden [N.P.] was married to [defendant] who she had met on the Internet" and who was 31 years her senior.   "[S]he told me about the day that she got married a little bit and she said that, you know, she thought she was going to a park and ended up downtown at a building, ends up signing something that she didn't read."

{¶13}  Dr. Connell stated the following about N.P.'s "ability to make important decisions that might involve risks":

{¶14}    "* * * I found that she's impaired in her ability to make those types of decisions, to fully advocate and protect her own health and safety due to her cognitive limitations."   Additionally, Dr. Connell recommended that N.P. having a legal guardian "should be looked at and pursued because I think that she has deficits in * * * her ability to protect her own health and safety, both in financial matters, in medical decision making and informed decision making * * *."

{¶15}    Asked by the court if N.P.'s ability to resist or consent in general was substantially impaired because of her mental condition, Dr. Connell replied, "My opinion

would be yes." Dr. Connell clarified that she did not evaluate N.P. specifically "regarding how able she is to consent to sexual conduct or contact," nor did she evaluate N.P. about anything specific to her ability to consent with defendant.

{¶16} Turning to defendant's expert forensic and neuropsychologist, John Fabian, the court set various "ground rules" at a hearing to determine the scope of Dr. Fabian's independent evaluation of N.P.

{¶17} Dr. Fabian testified that, in his opinion, the scope of his evaluation of N.P. was "to determine her ability to consent to sexual relations" based on whether she was substantially impaired. The State and defense counsel agreed that Dr. Fabian would have unfettered access to N.P.'s records and that he could administer various standardized tests to assess N.P.'s independent living skills, her emotional perception abilities, and her interpersonal functioning.

{¶18} The State objected, however, to defendant's request that Dr. Fabian be allowed to probe into N.P.'s mental thought process as to when or if she consented to having sex with defendant. The State also objected to testimony about N.P.'s prior sexual activity. Defendant argued that questions pertaining to N.P.'s perceptions of defendant "in a perfect world are germane * * * to her competency at that time to consent to that sexual activity * * *."

{¶19} The court upheld the State's objections and limited Dr. Fabian's evaluation accordingly. The court reasoned that the State's expert, Dr. Connell, did not delve into this line of questioning, because she was not evaluating N.P. for this purpose at the time. The court stated that a "legitimate inquiry * * * would be something to the effect testing [N.P.'s] capabilities as to intellectual functioning." Additionally, the court set "as a general rule, I would say don't get into the particulars of this case or this defendant or the events at all." Essentially, the court determined that "[w]hat will be good for the goose will be good for the gander," and that the State and defendant "will have equal access" to evaluating N.P.'s mental capacity.

{¶20} Additionally, the court noted that the rape shield law, R.C. 2907.02(D), prohibited the admissibility of a rape victim's sexual behavior. The court stated that defendant had a right to confront the witnesses against him, and that N.P.'s credibility and the "consensual aspects" of the case could be tested during her cross-examination.

{¶21} After the evaluation, Dr. Fabian reported that he was "unable to reach a decision on the very matter for which he was retained," i.e., "to evaluate [N.P.'s] ability to consent to the sexual relationship between her and [defendant]." Accordingly, defendant opted not to call Dr. Fabian as a witness during the proceedings.

{¶22} Trial courts are vested with broad discretion to determine issues involving the admissibility of evidence, by balancing relevancy, probative value, and the danger of

prejudicial effect.   Evid.R. 403; *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

We will not disturb this balancing act absent an abuse of discretion.   *State v. Slagle*, 65 Ohio

St.3d 597, 605 N.E.2d 916 (1992).

{¶23}   Upon review, we cannot say that the court abused its discretion in the case at

hand.   Actual consent is distinct from the ability to legally consent.   In other words, whether

N.P. consented is irrelevant if she was not capable of consenting under the offenses with

which defendant was charged.   *Compare State v. Haywood*, 8th Dist. No. 78276 (June 7,

2001) (rejecting a defense of consent to the rape of a 12-year-old girl, because it is contrary to

R.C. 2907.02(A)(1)(b).   "Simply put, a child under thirteen cannot validly consent to engage

in sexual conduct * * *").

{¶24}   Accordingly, defendant's first assignment of error is overruled.

{¶25}   In defendant's second assignment of error, he argues as follows:

II.

The trial court abused its discretion by ordering consecutive sentences which
amounted to a de facto life sentence.

{¶26}   The Ohio Supreme Court set forth the standard for reviewing felony

sentencing in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.   *See also*

*State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. *Kalish*, in a plurality

decision, held that appellate courts must apply a two-step approach when analyzing alleged error in a trial court's sentencing.

> First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.

*Id.* at ¶ 4.

{¶27} In the instant case, the court sentenced defendant as follows: seven life-in-prison sentences, each with the possibility of parole after ten years for the kidnappings; seven sentences of four years in prison each for pandering sexually oriented matter involving a minor, totaling 28 years; and two years in prison for tampering with evidence — the court then ran these sentences consecutive to one another. Technically, defendant's sentence is life in prison with the possibility of parole after 100 years; however, when defendant was sentenced he was 49. Practically speaking, defendant's sentence is life in prison with no possibility of parole, because it exceeds his life expectancy. Nontheless, it is within the statutory range, and nothing in defendant's appellate brief challenges this. *See, e.g.,* R.C. 2929.14(A). The crux of defendant's argument is that the court failed to make the R.C. 2929.14(C)(4) findings revived by Am.Sub.H.B. No. 86 before imposing consecutive sentences.

{¶28} Pursuant to R.C. 2929.14(C)(4), trial courts are required to make certain findings before imposing consecutive felony sentences. The court may require that sentences be served consecutively only if it finds that this is "necessary to protect the public from future crime or to punish the offender and * * * not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *."

{¶29} The court also must make findings regarding other specific factors, if they were pertinent to its decision to impose consecutive sentences, such as the offender's history of criminal conduct and whether the offenses were

> part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

R.C. 2929.14(C)(4)(b) and (c).

{¶30} At the October 18, 2011 sentencing hearing, the trial court stated that it took into consideration "the overriding purpose of sentencing [which] is to punish an offender, and that we will do, and to protect society from future crime by the offender and others like him of his ilk." The court made a finding that "defendant took advantage of a developmentally disabled young lady with cognitive defects, a very vulnerable individual." The court found that defendant was a predator and a "sexual deviant * * * with the history to prove it."

{¶31} The court found that "[t]here is a need for incapacitation" so defendant

can not harm again. He can not use his ability to, his diabolical skills on innocent 17-year-old children who can't protect themselves from his deviant, perverse desires. To deter him, that's another purpose, but it's not relevant here. He is not deterable. He is beyond that. His mind is corrupted to the point where there is no deterring or rehabilitation practical.

* * *

So I'm going to give him a sentence commensurate with the seriousness of his conduct, which are numerous felonies of the first degree with the specifications, the sexual motivation spec and the sexually violent predator specification on the kidnappings, which makes this a felony of the first degree with the minimum of a ten-to-life sentence for those counts.

{¶32} The court found that defendant was "egomaniacal," that he videotaped the offenses he committed, and bragged about the crimes on the videos. Additionally, the court found that defendant's "total lack of remorse makes him a danger to society, more likely to reoffend, and calls for a high sentence." The court stated that "[t]he injury incurred by the victim, exasperated by her age and mental condition, her likelihood of a serious psychological harm in the future is considerable." The court noted the "ridiculous age difference" of 31 years between defendant and N.P., and that defendant "put himself in a position of trust and control" over N.P.

{¶33} The court stated that it wanted to "prevent the defendant from not only committing an offense like this in the future, but * * * to send a message to him and others that there are consequences for such an offense. * * *.

The recidivism then is highly likely then based on his history of prior criminal convictions and imprisonment. He has not responded favorably to sanctions in the past. The behavior during the crimes, which [was] borderline brutal, it was very hard for the jury to sit here and watch that.

{¶34} Upon review, we find that the court has complied with R.C. 2929.14(C) and made the appropriate findings before ordering defendant to serve his sentences consecutively.

{¶35} Turning to the second step of the *Kalish* analysis, we review whether the court acted within its discretion when it sentenced defendant. "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶36} To determine whether the penalty imposed on a defendant is disproportionate to the crime committed, courts use a three-part comparison test: 1) the gravity of the offense with the harshness of the sentence; 2) defendant's sentence with other offenders' sentences in the same jurisdiction; and 3) defendant's sentence with sentences imposed for the same offense in other jurisdictions. *State v. Weitbrecht*, 86 Ohio St.3d 368, 371, 715 N.E.2d 167 (1999). However, this "disproportionality" test does not apply when the sole basis for a claimed error lies in the imposition of consecutive sentences. *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073.

> [W]e conclude that * * * proportionality review should focus on individual sentences rather than on the cumulative impact of multiple sentences imposed

consecutively. Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment.

*Id.* at ¶ 20.

Upon review and given the holding in *Hairston*, we cannot say that the court abused its discretion by imposing consecutive sentences.

**{¶37}** Defendant's second assignment of error is overruled.

**{¶38}** Defendant's third and fourth assignments of error state the following:

III.

The evidence presented at trial was insufficient to sustain convictions on the various counts in the indictment.

IV.

The verdicts are against the manifest weight of the evidence.

**{¶39}** Specifically, defendant argues that there was insufficient evidence in the record to show that N.P. was substantially impaired or mentally incompetent as contained in the offenses of rape, gross sexual imposition, and kidnapping. In the alternative, defendant argues that the State failed to present sufficient evidence that he had knowledge of N.P.'s substantial impairment or mental incompetence. Defendant also challenges these same elements as being against the manifest weight of the evidence.

{¶40} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶41} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:

> The appellate court sits as the "thirteenth juror" and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Determinations of witness credibility are primarily left to the trier of facts. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).

{¶42} In the instant case, our review of Dr. Connell's testimony in defendant's first assignment of error demonstrates sufficient evidence to show that N.P was substantially impaired or mentally incompetent and lacked the capacity to consent to sexual activity. For example, Dr. Connell testified that N.P. functioned at the level of a fourth or fifth grader and

that she had been in the special education program in school since age three.   Furthermore, Dr. Connell recommended that N.P. be under the supervision of a legal guardian.   In addition to this evidence, the record shows that N.P. graduated high school from an online program and obtained her temporary driver's permit at age 19.   At the time of trial N.P. had never held a job.

**{¶43}**   As to defendant's knowledge of N.P.'s mental condition, Dr. Connell testified that "when you talk to [N.P.], you clearly see [her] impairments * * * [and] in speaking with her they're very — very obvious to myself as a clinician and I would think to people around her."

**{¶44}**   In *State v. Lopez*, 8th Dist. No. 94312, 2011-Ohio-182, this court reviewed rape and gross sexual imposition convictions based on a claim of insufficient evidence that the victim was substantially impaired.   The victim in *Lopez* was 32 years old and lived with her parents.   She graduated high school at age 21, worked in the same office as her father for 11 years, and took the bus to work everyday.   *Id.* at ¶ 15.   The *Lopez* court held the following:

> [The victim's] sister testified that [the victim] could not live alone, drive a car, do her own banking, or shop for herself.   She further testified that [the victim] had a "job coach" to assist her with her employment and had never had a boyfriend. Thus, viewed in a light most favorable to the state, the evidence was sufficient to establish that [the victim] was unable to resist because of her mental condition for purposes of proving rape and gross sexual imposition.

*Id.*, at ¶ 64.

{¶45} Given the extensive testimony regarding N.P.'s developmental delays and cognitive impairments, we find sufficient evidence to show that her ability to resist or consent was substantially impaired and that she was mentally incompetent. Furthermore, we find sufficient evidence to show that defendant had knowledge of this. Defendant's third assignment of error is overruled.

{¶46} Turning to defendant's fourth assignment of error wherein he challenges the weight of the evidence against him, defendant makes no mention in his appellate brief of any evidentiary inferences, witness credibility, or conflicts in the evidence. Rather, he focuses exclusively on the alleged failure of proof or lack of evidence, which is the proper substance of a sufficiency argument. For this reason and under the authority of App.R. 12(A)(1)(c), defendant's fourth assignment of error is overruled.

{¶47} Defendant's fifth assignment of error states the following:

V.

The evidence on the sexually violent predator specification was insufficient as a matter of law.

{¶48} Pursuant to R.C. 2971.01(H)(1), a sexually violent predator is a person who commits a sexually violent offense and is likely to reoffend. Defendant's convictions in the

case at hand qualify as sexually violent offenses, and R.C. 2971.01(H)(2) lists factors that courts may consider to indicate the likelihood of recidivism:

(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f) Any other relevant evidence.

{¶49} In the instant case, the court held a sexually violent predator hearing on the day after trial. The State presented evidence that defendant was convicted of gross sexual imposition involving an eight year old boy in July 1985. Defendant was also convicted of public indecency in September 1984; this offense involved him exposing his penis while

masturbating, and the complaining witness was a 13 year old girl. Additionally, defendant was arrested on six other occasions for pubic indecency.

{¶50} Concerning defendant's convictions involving N.P., 43 of the 45 offenses are sexually oriented and may be considered under R.C. 2971.01(H)(2) for the sexually violent predator determination. *State v. Mitchell*, 8th Dist. No. 94287, 2010-Ohio-5775. Among the evidence presented at trial are videotapes of defendant tying N.P. to her bed, choking her, and using sex toys on her on multiple occasions over a six month period when N.P. was 17 years old. Defendant repeatedly manipulated and deceived N.P. and lied to the authorities.

{¶51} Upon review, we find that this evidence is sufficient to show that defendant is a sexually violent predator as defined in R.C. 2971.01(H). Defendant's fifth assignment of error is overruled.

{¶52} Defendant's sixth assignment of error states as follows:

VI.

Evidence that appellant did legal research did not constitute consciousness of guilt.

{¶53} In the instant case, Det. Krolkosky testified that on April 22, 2010, after he interviewed defendant about his relationship with N.P., defendant researched various legal issues on his home computer, such as "age of consent," "sex laws," "internet crimes," "spousal privilege," and "deleting email." During the State's closing argument, the

prosecutor asked the jury, "If [defendant] didn't think he did anything wrong, why is he going home and looking at those websites?" There are no objections on the record to the testimony or the closing remarks.

{¶54} "As a general rule an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred." *State v. Slagle*, 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992). However, this rule is softened by Crim.R. 52(B), which states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶55} Defendant argues that "seeking information about one's legal status does not equate with knowledge of guilt in a criminal matter." As support for this argument, defendant cites to Evid.R. 401, 402, and 403. Evid.R. 401 and 402 state that relevant evidence is admissible at trial and irrelevant evidence is inadmissible. Evid.R. 403 states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶56} Defendant cites to nothing else in the record, offers no examples or explanation, and provides no other legal authority to support his argument that it was plain

error for this evidence to be admitted at trial.   Accordingly, defendant's sixth assignment of error is overruled.

{¶57}   In defendant's seventh and final assignment of error, he argues as follows:

VII.

The trial court never defined sexual motivation for the jury.

{¶58}   Defendant was convicted of seven counts of kidnapping, including violations of R.C. 2941.147, which states that "the offender commited the offense with a sexual motivation."   The court instructed the jury that it would have to consider whether each count of kidnapping was commited with a sexual motivation.   Defendant argues on appeal that it was error for the trial court to fail to define sexual motivation for the jury.   Because defendant failed to object to the court's jury instructions, we review this allegation under the plain error analysis.   Crim.R. 30(A).

{¶59}   "A criminal defendant has a right to expect that the trial court will give complete instructions on all issues raised by the evidence."   *State v. Williford*, 49 Ohio St.3d 247, 251, 551 N.E.2d 1279 (1990).   However, the Ohio Supreme Court has held that common words or terms need not be defined.   *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 106.   In *Gross*, the court found no prejudice from the trial court's failure to define the terms "principal offender" and "escaping detection," because

these were terms of common usage and "[g]iven the overwhelming evidence of guilt." *Id.* at ¶ 107.

**{¶60}** Sexual motivation is defined in R.C. 2971.01(J) as "a purpose to gratify the sexual needs or desires of the offender." Despite the statutory definition, any error the court may have committed by failing to give the jury a detailed instruction regarding sexual motivation was harmless in the case at hand. Upon review, we find the R.C. 2971.01(J) definition mirrors a layman's understanding of the term sexual motivation. Additionally, as thoroughly discussed in defendant's previous assignments of error, the amount of evidence against him is vast and documented on videotape.

**{¶61}** Defendant's seventh and final assignment of error is overruled.

**{¶62}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, JUDGE

MARY J. BOYLE, P.J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY

[Cite as *State v. Petkovic*, 2012-Ohio-4050.]