[Cite as *State v. R.L.R.*, 2020-Ohio-4577.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 18AP-971 |
| | | (C.P.C. No. 17CR-5510) |
| v. | : | |
| [R.L.R.], | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 24, 2020

**On brief**: *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued**: *Seth L. Gilbert*.

**On brief**: *Samuel H. Shamansky Co.*, *L.P.A.*, *Samuel H. Shamansky*, *Donald L. Regensburger*, and *Colin E. Peters*, for appellant. **Argued**: *Donald L. Regensburger*.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} R.L.R., defendant-appellant, appeals from a judgment of the Franklin County Court of Common Pleas, in which the court found him guilty of six counts of rape, which are violations of R.C. 2907.02 and first-degree felonies; two counts of kidnapping with sexual-motivation specifications, which are violations of R.C. 2905.01 and first-degree felonies; and disseminating matter harmful to juveniles, which is a violation of R.C. 2907.31 and a fourth-degree felony.

{¶ 2} In April 2017, K.S., who was seven years old at the time, moved into the home of appellant and his girlfriend, C.S., who is K.S.'s aunt and the sister of K.S.'s mother. K.S.'s mother had gone to jail and was then hospitalized with meningitis. K.S.

testified that, not long after moving into appellant's home, appellant sexually abused her on several occasions in his bedroom, the specifics of which will be discussed in our treatment of appellant's assignments of error, and showed her pornographic videos on his cell phone.

{¶ 3} During a birthday party for K.S. in August 2017, K.S.'s mother got into an argument with C.S. and appellant. On August 12, 2017, K.S. moved into her mother's home, which she shared with her boyfriend, R.K. Thereafter, R.K. told K.S.'s mother that K.S. had engaged in sexual behavior with two of his minor grandchildren. On September 6, 2017, while K.S.'s mother and R.K. were working as part of the cleaning crew at The Ohio State University Stadium, and K.S. was helping them, K.S.'s mother spoke to K.S. about the sexual behavior, and K.S. revealed that appellant had touched her, causing K.S.'s mother to have a seizure. After the seizure, they started to drive to appellant's home to confront him, but R.K. contacted police, and they met with police at a park to discuss the matter.

{¶ 4} On September 13, 2017, a social worker interviewed K.S. at the Children Assessment Center ("CAC") at Nationwide Children's Hospital, and K.S. underwent a medical examination.

{¶ 5} On October 10, 2017, appellant was indicted on six counts of rape, two counts of kidnapping, and one count of disseminating matter harmful to juveniles. The kidnapping charges included sexual-motivation specifications. On October 29, 2018, a jury trial was held. At the trial, both parties called witnesses, and K.S. testified. On November 2, 2018, the jury found appellant guilty on all counts. On November 19, 2018, the trial court sentenced appellant to 15 years to life in prison on each of the rape counts, to be served concurrently; 15 years to life in prison on each of the kidnapping counts, to be served concurrently to one another but consecutive to the rape counts; and 17 months in prison on the count of dissemination of material harmful to a minor, to be served consecutively to all other counts; for a total sentence of 31 years and five months to life in prison.

{¶ 6} Appellant appeals the judgment of the trial court, asserting the following four assignments of error:

> [I.] THE TRIAL COURT ERRED BY PERMITTING THE ALLEGED VICTIM'S RECORDED HEARSAY STATEMENTS

TO BE PRESENTED TO THE JURY, IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

[II.] THE TRIAL COURT COMMITTED PLAIN ERROR BY FAILING TO PROPERLY INSTRUCT THE JURY AS TO THE ESSENTIAL ELEMENTS OF OHIO'S SEXUAL MOTIVATION SPECIFICATION, IN VIOLATION OF APPELLANT'S RIGHTS TO DUE PROCESS AND A FAIR AND IMPARTIAL JURY AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS.

[III.] APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF HIS RIGHT TO DUE PROCESS AS GUARANTEED BY THE OHIO CONSTITUTION.

[IV.] THE PROSECUTION'S QUESTION REGARDING APPELLANT'S PURPORTED CRIMINAL RECORD CONSTITUTED PROSECUTORIAL MISCONDUCT AND DEPRIVED APPELLANT OF A FAIR TRIAL, IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 7} Appellant argues in his first assignment of error the trial court erred when it permitted K.S.'s recorded hearsay statement from the interview at CAC to be presented to the jury, in violation of appellant's constitutional rights. "Ordinarily, we review a trial court's hearsay rulings for an abuse of discretion." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97, citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Absent a clear showing the court abused its discretion in a manner that materially prejudices a party, a reviewing court will not disturb a ruling on the admission of evidence. *State v. Phelps*, 10th Dist. No. 14AP-4, 2015-Ohio-539, ¶ 27.

{¶ 8} Hearsay is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, hearsay is not admissible unless an exception applies. Evid.R. 802. "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993). In the present case, the trial court relied on one of these exceptions—Evid.R. 803(4)—in admitting the potentially hearsay statement.

Pursuant to Evid.R. 803(4) "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are excepted from the hearsay rule. "The test for admissibility is whether the subject matter of the statements is reasonably pertinent to diagnosis or treatment." *State v. Nasser*, 10th Dist. No. 02AP-1112, 2003-Ohio-5947, ¶ 55.

{¶ 9} Here, appellant argues the entire recorded statement admitted into evidence at trial and provided by K.S. to Kari Wilkinson, a social worker who interviewed K.S. at CAC, constituted hearsay. During the interview, K.S. indicated appellant had put his penis in her anus and vagina, licked her vagina, and showed her pornographic videos on his phone. She also said his penis had a tattoo on it, nasty things would always happen in her aunt's room, appellant tried to be "nasty" with her in her cousins' room, appellant would get partially unclothed, appellant would only pull her pants and underwear down, appellant would cover her mouth and call her names, they watched pornographic movies on appellant's cell phone on Pornhub.com, and appellant had a lock on the top of his bedroom door that he would lock when he abused her.

{¶ 10} After appellant's counsel objected to the interview at trial, the court found it was permissible under Evid.R. 803(4). However, appellant asserts the trial court then stated that the disputed portions of the interview were admissible because they were "relevant" to the mental health recommendations. Appellant argues the test under Evid.R. 803(4) is not the same as permitting statements that are "relevant" or "related" to medical or mental health diagnosis or treatment. Appellant maintains the trial court's finding is not consistent with the following two-part test for admissibility under Evid.R. 803(4) this court set forth in *State v. Clary*, 73 Ohio App.3d 42, 52 (10th Dist.1991): (1) whether the declarant's motive is consistent with that of a patient seeking treatment, and (2) whether it is reasonable for the physician to rely on the information in diagnosis or treatment. Appellant contends that Evid.R. 803(4) does not render all medically related statements hearsay exceptions, but only those made by the declarant for the purpose of medical treatment or diagnosis, and many of the factual claims made by K.S. pertained to guilt without any indication they were also reasonably related to medical or mental health

diagnosis or treatment. Appellant indicates that, although he mainly takes issue with the statements concerning his tattoo and the lock on the bedroom door, which the trial court found were relevant to mental health recommendations, he contends that details about the location of the abuse, their relative states of undress during the incidents, and the source of pornography on appellant's phone also pertain solely to guilt and not medical treatment.

{¶ 11} We disagree with appellant's arguments and find the trial court did not abuse its discretion when it admitted the interview as evidence. Initially, appellant's contention that the prosecutor was required to show, pursuant to *Clary*, that K.S.'s motive was consistent with that of a patient seeking treatment is without merit. In *State v. Dever*, 64 Ohio St.3d 401, 409 (1992), the court rejected reading a "rigid motivation requirement" into Evid.R. 803(4), given that "a young child's statements to a doctor in the course of a medical examination will virtually never be admissible under that rule." *Id*. "Once the child is at the doctor's office, the probability of understanding the significance of the visit is heightened and the motivation for diagnosis and treatment will normally be present." *Id*. at 410. "In many situations, the statements of young children are sufficiently trustworthy and can appropriately be admitted pursuant to Evid.R. 803(4)." *Id*. Notwithstanding, here, the record shows that K.S. knew she was in a medical setting. The conversations between Wilkinson and K.S. regarding the purpose of her being at CAC referred several times to the term "doctor," and she explained why her mother had brought her to the "doctor" that day. Therefore, to the extent that appellant argues the prosecutor did not show that K.S.'s motive was consistent with a patient seeking treatment, we reject such contention.

{¶ 12} With regard to appellant's argument that many of the factual claims made by K.S. in the recorded interview pertained to guilt without any indication they were also reasonably related to medical or mental health diagnosis or treatment, appellant only specifically contests two of the factual claims: (1) appellant used a lock at the top of the door while they were in the bedroom, and (2) appellant had a tattoo on his penis.

{¶ 13} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, the Supreme Court of Ohio noted the dual purpose of an interviewer at a children's advocacy center. The court explained the purpose of a children's advocacy center is to provide a

comprehensive, multidisciplinary response to allegations of child abuse to avoid multiple interviews of the child. Children's advocacy centers coordinate the interview to include professionals from multiple agencies, including law-enforcement professionals, prosecutors, medical and mental health personnel, and child advocates. To ensure that the child victim goes through only one interview, the interviewer must elicit as much information from the child as possible in a single interview and must gather the information needed by each team member. Thus, the interview serves dual purposes: (1) to gather forensic information to investigate and potentially prosecute a defendant for the offense, and (2) to elicit information necessary for medical diagnosis and treatment of the victim.

{¶ 14} In the present case, with regard to K.S.'s statements regarding the tattoos on appellant's penis, the following conversation took place between Wilkinson and K.S.:

> Q. * * * Tell me why your mom brought you to the doctor today.
>
> A. Okay. Why my mommy brought me to the doctor today --
>
> Q. Uh-huh.
>
> A. -- is because this guy named [R.L.R.], he, like, when I was living with my aunt, he was being nasty to me and all of that stuff. And he has a tattoo on his thing. And he was being nasty to me after my aunt went to work.

(Tr. Vol. III at 309.)

{¶ 15} From the above, it is clear that, at least to K.S., the tattoo was part of the reason she was seeing the doctor at CAC. She mentioned the tattoo in her initial response to why she was seeing the doctor. Thus, it is apparent that K.S. knew she was in a medical setting when she made the statement about the tattoo on appellant's penis. *See, e.g., State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, ¶ 55 (evidence suggested that child knew she was in a medical setting at the time she disclosed information about the defendant to social worker at a child maltreatment clinic).

{¶ 16} The trial court found K.S.'s statements regarding the tattoo were admissible because they were pertinent to a mental health diagnosis. Medical diagnosis under Evid.R. 803(4) includes mental health. *In re S.A.*, 12th Dist. No. CA2017-07-092, 2017-

Ohio-8792, ¶ 41. Here, Wilkinson's testimony supported the finding that K.S.'s statements regarding the tattoo served to aid in K.S.'s mental health assessment. Wilkinson stated that:

> A. Actually, you know, medical diagnosis encompasses medical, mental health. So that tattoo on the private part could trigger something in that child. So for her mental health, I mean, it would be important to gather that information.
>
> As far as medical reasons, you could ask the doctor about if there is any reason why that would be important for her. But in terms of mental-health-wise, I mean, seeing a tattoo on a private part could be triggering for that child and she could have a traumatic reaction, yes.

(Tr. Vol. III at 346-47.) As plaintiff-appellee, State of Ohio, points out, the fact that K.S. responded to Wilkinson's question about why she was seeing a doctor that day by commenting about the tattoo demonstrates that the tattoo did, in fact, have a significant mental health impact on K.S.

{¶ 17} Furthermore, beyond the mental health relevancy of the tattoo, the existence of the tattoo also served as a basis for medical treatment and diagnosis. That K.S. was aware of the tattoo on appellant's penis helped doctors determine which part of appellant's body K.S. had contact with. As quoted above, when asked why she was seeing the doctor the day of the interview, K.S. responded that appellant had a tattoo on "his thing." Precisely which part of his body was "his thing" is vitally important to medical diagnosis and treatment. Wilkinson testified that the identification of the private parts and location of the tattoo were important for medical purposes because "she was saying, 'private parts.' I just wanted to make sure, first of all, that I knew which private part she was talking about that the tattoo was on, because men have more than one private part. And then I did ask her, yes, where on the private part it was." (Tr. Vol. III at 348.) Thus, K.S.'s statements about the tattoo on appellant's private parts was pertinent to both K.S.'s medical and mental health diagnosis and treatment and, thus, admissible pursuant to Evid.R. 803(4).

{¶ 18} With regard to the lock on appellant's bedroom door and K.S.'s statement that appellant locked the door when he abused her, appellant contends these statements

were not for medical diagnosis or treatment. The Supreme Court has before found that a child-victim's statements to counselors and social workers regarding the perpetrator's locking the door were admissible as pertinent to medical treatment under Evid.R. 803(4). *See Muttart* at ¶ 16-19 and ¶ 60-64 (statements to social worker and therapist that defendant locked the bathroom door before sexually abusing the child were made in furtherance of medical treatment and admissible pursuant to Evid.R. 803(4)). However, the Supreme Court has also found such statements are inadmissible under Evid.R. 803(4), as being more for investigative purposes. *See Arnold* at ¶ 34 (statement to social worker at child advocacy center that defendant locked door before sexually abusing child primarily served a forensic or investigative purpose). Here, given our abuse-of-discretion standard, we cannot find error in the trial court's determination. Being locked in a room before being sexually abused can clearly have a mental health impact on a child's security, fears, and anxiety, and such information can be useful for future mental health treatment, as the trial court ultimately concluded. Therefore, we find no abuse of discretion in this case.

{¶ 19} As for the rest of K.S.'s statements that appellant summarily challenges on appeal, appellant raised no specific arguments concerning such in the trial court. This court has found failure to object to the admission of hearsay statements waives such error on appeal, especially where there are no "exceptional circumstances, but rather a typical failure to object to typically disputed evidentiary material." *Russi v. Brentlinger Ents.*, 10th Dist. No. 10AP-1143, 2011-Ohio-4764, ¶ 24 (where there was no error that " 'seriously affects the basic fairness, integrity or public reputation of the judicial process,' " the failure to object to the hearsay at trial forfeited that argument on appeal); *Id.* at ¶ 23 quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 123 (1997); *Geauga Metro. Housing Auth. v. Biggs*, 11th Dist. No. 98-G-2207 (May 19, 2000) (finding it unnecessary to consider a hearsay issue when it was not objected to at the trial court level). Here, we find appellant has waived these arguments, and there is no plain error. Statements regarding the location of abuse and exposure to pornography have been found admissible under Evid.R. 803(4). *See State v. Cook*, 3d Dist. No. 14-19-26, 2020-Ohio-3411, ¶ 1 (statements made by child during forensic interview regarding locations of abuse and exposure to pornography were pertinent to diagnosing the victim and providing him with

appropriate physical and psychological treatment, and were made for purposes of medical diagnosis or treatment). As for K.S.'s statements describing her and appellant's various states of undress, these descriptions could be pertinent to medical diagnosis and treatment, in that they could limit or define what sexual contact could have taken place based on where their pants and underwear were positioned on their bodies. For these reasons, we find the trial court did not err when it admitted the statements made by K.S. to forensic interviewer Wilkinson at CAC, because they were pertinent to medical diagnosis and treatment pursuant to Evid.R. 803(4). Therefore, we overrule appellant's first assignment of error.

{¶ 20} Appellant argues in his second assignment of error the trial court committed plain error when it failed to properly instruct the jury as to the essential elements of Ohio's sexual-motivation specification, in violation of appellant's due process rights and right to a fair and impartial jury. Appellant admits he did not object to the jury instructions. As a result, he has forfeited all but plain error. *See* Crim.R. 30(A); Crim.R. 52(B); *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22-23. To succeed under a plain-error review, appellant must demonstrate that the error affected the outcome of the trial. *See State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 21} Here, appellant argues the specification statute references the definition in R.C. 2971.01, which requires a finding that the offender must have a need or desire for sexual gratification rather than a purpose to simply engage in sexual activity. He contends the disparity between the statutory definition of "sexual motivation" and other terms defined in the jury instructions, such as "sexual activity," "sexual conduct," and "sexual contact," caused confusion with the jury.

{¶ 22} "Sexual motivation," as it related to the specifications on the kidnapping counts in the present case, is defined as "a purpose to gratify the sexual needs or desires of the offender." R.C. 2971.01(J). The trial court instructed the jury that it must determine whether the kidnapping offenses were committed with a sexual motivation, but the court did not define the term. In general, "a defendant is entitled to have the jury instructed on all elements that must be proved to establish the crime with which he is charged." *State v. Adams*, 62 Ohio St.2d 151, 153 (1980). However, "a trial court's failure to separately and specifically charge the jury on every element of each crime with which a defendant is

charged does not *per se* constitute plain error nor does it necessarily require reversal of a conviction." (Emphasis sic.) *Id.* at 154. Rather, "an appellate court must review the instructions as a whole and the entire record to determine whether a manifest miscarriage of justice has occurred as a result of the error in the instructions." *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, ¶ 17. In considering the charge as a whole, "if it appears from the entire charge that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results." *State v. Cope*, 12th Dist. No. CA2009-11-285, 2010-Ohio-6430, ¶ 57, citing *State v. Hardy*, 28 Ohio St.2d 89, 92 (1971).

{¶ 23} Here, we find there was no prejudice. The Eighth District Court of Appeals has addressed the same circumstances as in the present case in *State v. Petkovic*, 8th Dist. No. 97548, 2012-Ohio-4050, ¶ 59-60. In *Petkovic*, the defendant was convicted of several kidnapping offenses that included sexual-motivation specifications. The court instructed the jury that it would have to consider whether each count of kidnapping was committed with a sexual motivation but did not define sexual motivation for the jury. The defendant failed to object to the court's jury instructions, so the court reviewed the argument under a plain-error standard. The court in *Petkovic* first noted that the Supreme Court has held that common words or terms need not be defined. *Id.* at ¶ 59, citing *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 106. The court then concluded that "[d]espite the statutory definition [in R.C. 2971.01(J)], any error the court may have committed by failing to give the jury a detailed instruction regarding sexual motivation was harmless in the case at hand. Upon review, we find the R.C. 2971.01(J) definition mirrors a layman's understanding of the term sexual motivation." *Id.* at ¶ 60. In the present case, we concur with the holding in *Petkovic* and find that, although the trial court here failed to define "sexual motivation," for purposes of the sexual-motivation specifications, the statutory definition mirrors the common understanding of the term. Therefore, we find no plain error, and we overrule appellant's second assignment of error.

{¶ 24} Appellant argues in his third assignment of error that his convictions are against the manifest weight of the evidence. "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences,

consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Ndiaye*, 10th Dist. No. 19AP-10, 2020-Ohio-1008, ¶ 35; *see also, e.g.*, *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). In undertaking this review, determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, believing all, part, or none of a witness's testimony. *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 25} In the present case, appellant argues all his convictions were against the manifest weight. He asserts that, because there was no physical or forensic evidence presented, the verdicts relied on K.S.'s testimony, which contained inconsistencies. Appellant first contends that K.S.'s testimony differed from her statement at the CAC interview in that, at trial, she denied she was subjected to cunnilingus, but she stated at the CAC interview that appellant performed cunnilingus on her. However, the jury could have believed her CAC interview was more credible because it was very detailed, she was in a more comfortable environment, or she had forgotten the details of the abuse by the time of trial. We cannot say the jury was unreasonable and lost its way in this regard.

{¶ 26} Appellant next argues that, in the CAC interview, K.S. stated that the abuse occurred both in her cousins' room and in appellant's room, but at trial she testified all of the incidences took place in appellant's room. A review of the CAC interview shows that K.S. stated they were "always" in appellant's room "when he did nasty things," and that appellant only "tried to be nasty with" her in her cousins' room, but she resisted and appellant left the room. (Tr. Vol. III at 313; 318-19.) At trial, she stated that the nasty things only happened in appellant's bedroom, and when questioned on cross-examination about her cousins' room, K.S.'s testimony was confusing:

> Q. And I remember the prosecutor said that this happened in [appellant's] and [C.S.]'s bedroom. Did it ever happen in anybody else's bedroom?

A. No.

Q. It never happened in [your cousins'] bedroom?

A. No.

Q. Did he ever supposedly try to take you in there?

A. Huh-uh.

Q. Did you ever tell a nurse or the police that he did?

A. Yes.

Q. Why did you tell?  You were lying to them?

A. No.  I told them what happened.

Q. Oh, you didn't tell them he tried to take you into the kids' bedroom?

A. No, he never.

Q. So if they wrote that down, they got mistaken, the police were mistaken?

A. He never tried to take me into my cousins' bedroom.

Q. He never did?

A. No.

Q. Just into [C.S.]'s bedroom?

A. Yes.

(Tr. Vol. II at 213-14.)

{¶ 27} From this unclear exchange, the jury could have reasonably believed K.S. was referring only to actual abuse during her trial testimony. Notwithstanding, merely because there may have been a conflict on this minor issue, the jury could have reasonably believed she was credible overall. Given the state of the record, we cannot say the jury lost its way.

{¶ 28} Appellant also argues that although she suffered from bleeding as a result of anal sex, no injuries were corroborated by the medical exam. However, Dr. Kristen Crichton testified there is extensive research indicating that over 95 percent of sexually abused children have normal physical exams. She also stated there are different "insides," and how a child perceives a touch may not be actually inside, but even if there is anal penetration, the tissue is stretchy and accommodates pressure without leaving any injury. Even if there is an injury, the mucosal tissue can heal up within a few days without scarring. In the present case, K.S. was examined one month after the last contact with appellant. Thus, Dr. Crichton said it was not surprising that her exam was normal.

{¶ 29} Appellant also argues that while K.S.'s description of appellant's penis arguably matched the photographic evidence, it was well-established through witness testimony that K.S. was afraid of her mother and would say things to please her. Additionally, appellant argues it was apparent that K.S.'s mother had a previous sexual encounter with appellant and more recently developed a rocky relationship with appellant and his girlfriend, C.S. Thus, appellant's suggestion is that K.S. was lying to make her mother happy, or her mother coached K.S. based on a grudge against appellant. However, despite any testimony that K.S. would say things to please her mother, there was no evidence that K.S.'s mother coached her or intimidated her into making up the allegations against appellant, and K.S.'s mother denied doing so. Also, although there was some testimony about some possible past sexual activity between appellant and K.S.'s mother, her mother testified she had never seen appellant naked and did not know he had a tattoo on his penis, undermining the claim that K.S.'s mother coached K.S. as to what to say. Furthermore, K.S.'s mother's boyfriend, R.K., testified he and K.S.'s mother were working at The Ohio State University cleaning the stadium when K.S. told her mom about the abuse, and K.S. was crying and upset when asked if anyone had "messed" with her. R.K. said the conversation with K.S. was prompted by his concerns about K.S. and his grandchildren doing "dirty" things and he asked K.S.'s mother to talk to K.S. about it. K.S.'s mother also suffered a seizure when K.S. told her about the abuse. The circumstances under which K.S. revealed the abuse are more consistent with a spontaneous revelation rather than a pre-planned arrangement to falsely accuse appellant.

{¶ 30} Appellant further points out that K.S.'s mother struggled with drugs and exposed K.S. to sexualized environments in her home and by taking her to strip clubs where she worked, thereby sexualizing K.S. prior to residing with appellant. Appellant also points out that K.S. exhibited sexualized behavior by inappropriately touching other children prior to living with appellant. Although these contentions may be true, there exists no tangible evidence that they caused K.S. to fabricate the allegations against appellant. Without any supporting evidence, appellant's theories are merely speculative.

{¶ 31} Appellant also argues the living situation at his residence was not conducive to the alleged abuse, given eight children and multiple adults lived there, appellant worked long hours, C.S. and other adults were frequently home during the workday, doors were most often open in the home, and those who resided at the home testified the lock on appellant's bedroom door was not functional. However, none of these assertions provide any substantial evidence to demonstrate the abuse could not have taken place as alleged, and none of appellant's witnesses could state that it was impossible for the abuse to have occurred. K.S. also testified appellant closed and locked the bedroom door during the sexual abuse, and one witness testified that appellant would sometimes come home during the middle of the workday, thereby making the sexual abuse possible.

{¶ 32} Appellant also points out that, although K.S. claimed appellant showed her pornography on his cell phone and police found appellant had visited pornographic sites on his cell phone, appellant's girlfriend, C.S., testified that she watched pornographic movies with appellant on his cell phone. However, this evidence does not undermine K.S.'s testimony or render her testimony impossible or implausible. It is not impossible or unreasonable for the jury to believe that appellant watched pornography with both K.S. and his girlfriend.

{¶ 33} Therefore, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot find the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. In the end, the jury found K.S. credible, and appellant presents nothing in this appeal beyond conjecture and unsubstantiated theories that K.S. fabricated the allegations of sexual abuse against him. For these reasons, we overrule appellant's third assignment of error.

{¶ 34} Appellant argues in his fourth assignment of error that the prosecutor's question regarding appellant's purported criminal record constituted prosecutorial misconduct and deprived appellant of a fair trial, in violation of his rights as guaranteed by the Sixth Amendment of the United States Constitution. When reviewing allegations of prosecutorial misconduct, the test for appellate courts is whether the prosecutor's conduct was improper and, if so, whether that conduct prejudicially affected the substantial rights of the accused. *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 57 (10th Dist.). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "Accordingly, prosecutorial misconduct will not be grounds for reversal unless the defendant has been denied a fair trial." *State v. Elson*, 10th Dist. No. 13AP-554, 2014-Ohio-2498, ¶ 30, citing *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). "[I]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *State v. Smith*, 14 Ohio St.3d 13, 15 (1984).

{¶ 35} In the present case, appellant argues that, while questioning C.S, the prosecutor asked whether she knew appellant was convicted of a drug offense in 2011, and, in light of the clear prohibition of such evidence when a defendant does not testify, pursuant to Evid.R. 609(F), this constituted prosecutorial misconduct. The prosecutor claimed C.S. had "opened the door" to examine her on appellant's drug use because she testified she chose not to be around people who used drugs. The trial court disagreed and said the prosecutor could not raise appellant's past criminal record unless appellant testified.  Appellant's counsel moved for a mistrial, but the trial court denied the motion, indicating it would strike the question and instruct the jury to disregard it. Appellant argues the trial court's actions were insufficient to remedy the prejudice suffered. Appellant claims that in a trial with no physical evidence, where the credibility of witnesses is of upmost importance, appellant was prejudiced by the prosecutor's actions.

{¶ 36} The state admits appellant's prior drug conviction was not admissible for impeachment purposes under Evid.R. 609 because appellant did not testify. The state asserts, however, that it was at least arguable C.S.'s testimony on direct examination that she never associated with drug users opened the door for the prosecutor to ask her whether she was aware of appellant's prior drug conviction. Although the drug conviction

was from 2011, C.S. stated she had known appellant since before she could remember and, the state contends, it was at least arguably fair for the prosecutor to ask whether C.S. associated with appellant at the time of his conviction and/or whether appellant continued using drugs while living with C.S.

{¶ 37} It is undisputed the prosecutor's question was impermissible. However, whether the prosecutor's question was intentional or misguided, we cannot find appellant was denied a fair trial. This was a single question about drug use in a case that did not involve drug charges or any allegations that drug use contributed to the offenses, thereby rendering the question harmless and of highly dubious prejudicial impact. Also, C.S. never gave an answer, and the trial court sustained defense counsel's objection, so the jury never heard any impermissible evidence. Furthermore, the trial court gave an instruction, telling the jury that it was going to strike the question and they should completely disregard it for any purpose. "A jury is presumed to follow the instructions given to it by the trial judge." *State v. Stallings*, 89 Ohio St.3d 280, 286 (2000). We have no reason to believe the jury did not follow the trial court's instructions here. Therefore, for the foregoing reasons, we find the prosecutor's improper question did not prejudice appellant or affect his substantial rights. *See, e.g., State v. Kaaz*, 12th Dist. No. CA2016-05-010, 2017-Ohio-5669, ¶ 66 (no error in denying motion for mistrial based on prosecutorial misconduct when the trial court immediately sustained defense counsel's objection, the witness did not answer the question, and the jury was properly instructed that attorney statements were not evidence, and there is no reason to believe the jury did not fully and faithfully follow the court's instructions); *State v. Ervin*, 8th Dist. No. 88618, 2007-Ohio-5942, ¶ 35-38 (finding the trial court did not err when it denied a mistrial for prosecutorial misconduct when the court sustained defense counsel's objection, the witness never answered the prosecutor's question, and the court instructed the jury to disregard any question to which the court sustained an objection); *State v. Ferguson*, 8th Dist. No. 80400, 2002-Ohio-4089, ¶ 8 (no ground for reversal for prosecutorial misconduct when no prejudice or substantial right affected, the court sustained the objection before the witness could answer, and the question was innocuous); *State v. Chapman*, 2d Dist. No. 95 CA 80 (Oct. 11, 1996) (denial of mistrial for prosecutorial misconduct proper because defendant did not demonstrate prejudice when the trial court

sustained defense counsel's objection and instructed the jury the question was improper and to disregard it, and the witness did not answer the improper question). For these reasons, we overrule appellant's fourth assignment of error.

{¶ 38} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT, J., concurs.
DORRIAN, J., concurs in part and concurs in judgment only.

DORRIAN, J., concurring in part and concurring in judgment only.

{¶ 39} Respectfully, I concur with the majority to overrule assignments of error two, three, and four; however, I concur in judgment only to overrule assignment of error one.

{¶ 40} In this case, K.S. herself testified and was subject to cross-examination. Indeed, in support of his third assignment of error that the verdicts were against the manifest weight of the evidence, appellant argues K.S.'s live testimony was inconsistent with K.S.'s responses provided at the CAC interview.

{¶ 41} In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, paragraph one of the syllabus, the Supreme Court of Ohio stated:

> Statements made to interviewers at child-advocacy centers that serve primarily a forensic or investigative purpose are testimonial and are inadmissible pursuant to the Confrontation Clause *when the declarant is unavailable for cross-examination*.

(Emphasis added.)

{¶ 42} Recently, in *State v. Hughes*, 10th Dist. No. 14AP-360, 2015-Ohio-151, ¶ 43, this court considered Hughes' argument that the trial court erred in admitting a social worker's testimony regarding what a prosecuting witness had stated during an interview conducted by the social worker. Citing paragraph one of the syllabus in *Arnold*, in *Hughes*, we concluded that, because the prosecuting witness testified, there was no concern regarding the Confrontation Clause. *Id.* In *Hughes*, we relied on *State v. Boyer*, 10th Dist. No. 06AP-05, 2006-Ohio-6992. In *Boyer*, we stated: *Crawford* states that

" 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.' "  *Id.* at ¶ 18, quoting *Crawford v. Washington*, 541 U.S. 36, 59 (2004) fn. 9, citing *California v. Green*, 399 U.S. 149, 162 (1970).

{¶ 43} As in *Hughes* and *Boyer*, here K.S. was present to testify and was cross-examined.  For the reasons articulated above, I concur in judgment only with the majority and would overrule the first assignment of error.

_____